## THE MARGARET A. MORAN.

## THE GEORGE N. BARRETT.

## FOREIGN TRANSPORT & MERCANTILE CORPORATION v. MORAN TOWING & TRANSPORTATION CO. et al.

### No. 303.

Circuit Court of Appeals, Second Circuit.

April 4, 1932.

Park, Lynch & Hagen, of New York City (Anthony V. Lynch, Jr., and Charles W. Hagen, both of New York City, of counsel), for respondent-appellant.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell and Paul L. Clugston, both of New York City, of counsel), for libelant-appellee.

Burlingham, Veeder, Fearey, Clark & Hupper, of New York City, for appellee the Steam Tug George N. Barrett.

Before MANTON, L. HAND, and SWAN, Circuit Judges.

MANTON, Circuit Judge.

On June 9, 1923, with the tide ebb and a northwest wind, the tug Margaret A. Moran made fast on the port bow of the Allaguash, when the steamship was off Pier 61, for the purpose of docking her at Pier 65. The master of the tug Moran went on the bridge of the ship and took charge of the docking maneuvers. The tug George N. Barrett took a line from the ship's starboard quarter. The master of the Moran intended to place the Allaguash stern in on the north side of the pier. The master, third mate, and helmsman were on the bridge of the ship, and the second officer was aft on the poop. When the Allaguash was off the pier end, the engines of the Allaguash and the Barrett were working slow ahead and the engines of the Moran were in backing motion. The helm of the ship was put to starboard to swing her bow downstream and bring her stern in toward the slip. The pilot could not see the end of the pier because of the overhang of the ship. He said he received a signal from the officer stationed on the poop that all was clear. The tug Barrett then blew alarm signals; the pilot stopped the ship's engines and shortly thereafter the propeller of the Allaguash struck the piling on the upper end of the pier, causing damage to the ship. It is for this damage that the libel was filed. It is charged that the Moran's master was negli-

gent in giving signals and in navigating the ship.

The contract of employment of the tugs for this docking was made by telephone. Prior thereto, in May, 1922, a schedule of rates and contract of terms for such service was left by the vice president of the appellant, Moran Towing & Transportation Company, with the appellee, Foreign Transport & Mercantile Corporation, while he was soliciting business. One of the terms of the contract was a pilotage clause reading as follows:

"Pilotage.

"When the captain of any tug engaged in the services of towing a vessel which is making use of her own propelling power goes on board said vessel, it is understood and agreed that said tugboat captain becomes the servant of the owners in respect to the giving of orders to any of the tugs engaged in the towage service and in respect to the handling of such vessel, and neither the tugs nor their owners or agents shall be liable for any damage resulting therefrom."

The record sufficiently sustains the appellant's contention that the terms of this contract were called to the attention of the appellee. On June 15, 1922, a letter inclosing a towing schedule was mailed to the steamship company at the request of its general manager, Captain Smith, and this schedule, like the other, contained the pilotage clause. In February, 1923, the appellee's pier superintendent, while receiving instructions from his superiors, was given a copy of the Moran towing schedule. He testified that he read it and had made himself familiar with the pilotage clause. During 1922 and 1923, the appellant, Moran Towing & Transportation Company, docked 42 ships for the appellee steamship company, and there is no evidence of any different contract or agreement having been entered into. The tug charges were pursuant to the schedule. This schedule was in general use in New York Harbor. The engaging of the Barrett tug was under a similar contract. The Mexpet, 288 F. 718 (C. C. A. 2).

This towing schedule, containing the pilotage clause, sufficiently apprised the appellee that the service was to be rendered on these terms. No other terms having been suggested by the appellee, we must assume that they accepted the terms contained in the schedule. Sun Oil Co. v. Dalzell Towing Co., 55 F. (2d) 63 (C. C. A. 2).

By reason of the terms of the pilotage clause, when the master of the Moran navigated the steam vessel under her own propelling power, he became the servant of the owner of the vessel with respect to giving orders to any of the tugs engaged in the towage service and with respect to handling the vessel, and the tugs were thereupon released from faults or acts of negligence of the master of the Moran. Under the circumstances, it becomes unnecessary to inquire into and determine whether the master of the Moran was guilty of faulty navigation or other omissions which brought about the damage to the propeller of the ship. He became a servant of the owner of the vessel, and the Moran Towing & Transportation Company was not responsible for his acts.

Decree reversed.